UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

DR. CHARITY WELCH,                                 :
               Plaintiff,               :
                              :
         v.                                           :        No.  5:20-cv-4942
                              :
MILLERSVILLE UNIVERSITY and         :
VICTOR DESANTIS,                               :
               Defendants.                :

_____

**O P I N I O N**
**Defendants' Motion for Summary Judgment, ECF No. 25 – Granted**

**Joseph F. Leeson, Jr.**                                                          **January 14, 2022**
**United States District Judge**


I.       **INTRODUCTION**

Plaintiff Charity Welch alleges that she was subject to discrimination, retaliation, and a hostile work environment because of her race and sex by her former employer Defendant Millersville University and former supervisor Defendant Victor DeSantis.  Defendants have filed a Motion for Summary Judgment asserting their entitlement to judgment on all claims.  For the reasons set forth below, the Motion is granted.

II.      **UNDISPUTED FACTS**

On June 1, 2016, Welch, who is a Black female, was appointed Assistant Dean for Millersville's College of Graduate Studies and Adult Learning ("CGASL").  *See* Defs.' Stmt Fact ¶¶ 1, 6, ECF No. 25-2; Pl.'s Resp. Defs.' Stmt Fact ¶¶ 1, 6, ECF No. 29-6.  At this time, DeSantis was the Dean of CGSAL.  *Id.* ¶ 2.

Welch alleges that she was harassed by DeSantis in that "he treated [her] different" because he "had very little communication and interaction with [her]."  *Id.* ¶ 10 (citing Pl. Dep.

47:6-49:14, ECF No. 25-3).  Welch also felt harassed because her office desk was "the oldest furniture all taped up and it was a mess," but DeSantis "emphatically" denied her request for new office furniture, even though providing better furniture to white female employees.  *Id.* ¶¶ 10-12.  Welch asserts that in the spring of 2017, DeSantis yelled at her in front of a group of people during a retreat.  *Id.* ¶¶ 15-16.  Welch testified that she had never seen DeSantis "lash out" at anyone like this before and that it was based on her race and sex because he would not have treated her white or male coworkers the same.  *Id.* ¶¶ 17-20.  There was one occasion when DeSantis yelled at a white female employee during a private meeting.  *Id.* ¶ 22.  Welch also asserts that she was harassed because DeSantis moved money around in her budget and worked with other employees more closely.  *Id.* ¶¶ 23-26.  Additionally, Welch testified that DeSantis refused to work with Black students and interfered with Welch's hiring of a Black graduate student.  *See* Welch Dep. 66:19 – 67:21, 83:2 – 84:14, ECF No. 25-3.  Welch admitted that the Black student she wanted to hire was on academic probation and that academic probation status "should have been" checked, but stated that it was not ever checked before.  *See id.*

In 2017, Plaintiff accessed and reviewed Millersville's Discrimination and Harassment Policy and Complaint Procedures (the "Policy").  *See* Defs.' Stmt Fact ¶ 34; Pl.'s Resp. Defs.' Stmt Fact ¶ 34.  The Policy provides that any report of discrimination or harassment be made to the Director of Human Resources ("DHR").  *Id.* ¶ 35.[1]  Millersville's DHR was DeSantis's wife.  *Id.* ¶ 41.  For this reason, Welch did not want to report DeSantis's conduct to the DHR.  *Id.*  Nevertheless, in February 2018, Welch became "tired" of his conduct and went to Millersville Provost Vilas Prabhu, to whom DeSantis reported.  *Id.* ¶¶ 40, 42; Pl. Dep. 86:5-10.  Welch

---

[1]          The parties dispute whether a complaint may also be made to the Title IX Coordinator.

informed Prabhu that she was being treated "differently" by DeSantis.[2]  Defs.' Stmt Fact ¶¶ 43-

44; Pl.'s Resp. Defs.' Stmt Fact ¶¶ 43-44.  Prabhu thereafter met with DeSantis to discuss the

issues that Welch had raised.  Prabhu Dec. ¶ 46.  Prabhu declared that DeSantis agreed to address

the matter and to review possible modifications for communications.  *Id.* ¶¶ 43-45.  During this

conversation, DeSantis stated that he did not have any concerns about Welch's ability to perform

her job.  *Id.*

Following Welch's meeting with Prabhu, the only other interaction Welch had with

DeSantis that she felt rose to the level of harassment was when he denied her request to get an

additional staff member to help alleviate the workload.  *See* Pl. Dep. 92:19 - 93:2, 95:15 - 96:13.

Welch testified that she commented to DeSantis that while other units were growing she was not

getting any new staff, but DeSantis "never really responded to it."  *Id.* 96:10-13.  Welch stated

that DeSantis did not show any of the meanness or unprofessional conduct she had experienced

previously, instead "he just looked at [her] and shook his head no."  *Id.* 96:14-20.  Welch admits

that at no time, either before or after her report to Prabhu, did DeSantis ever use any threatening

words to her, ever use any racially charged language, or ever use derogatory or demeaning

language about women.  *See* Defs.' Stmt Fact ¶¶ 30-32; Pl.'s Resp. Defs.' Stmt Fact ¶¶ 30-32.

In March 2018, Welch received a raise of approximately $1,600, in line with raises given

to other employees.  Defs.' Stmt Fact ¶ 48; Pl.'s Resp. Defs.' Stmt Fact ¶ 48.  In July 2018,

DeSantis completed an annual written performance evaluation for Welch, in which he rated her

overall performance as "above expectations."  Prabhu Dec. Ex. Q, ECF No. 25-4.  In each of the

---

[2]     It is disputed whether or not Welch informed Prabhu that she was being treated
differently specifically on account of her race.  *Id.* ¶ 43; Pl. Dep. 89:19 – 90:2.  It is undisputed
that Welch did not report to Prabhu any harassment related to sex or age.  Defs.' Stmt Fact ¶ 45;
Pl.'s Resp. Defs.' Stmt Fact ¶ 45.

individual performance factors, DeSantis rated Welch as either "above expectations" or "significantly exceeds expectations." *Id.* DeSantis's written comments about Welch were all positive. *See id.*

Effective July 1, 2018, a new president of Millersville was appointed and he selected DeSantis to be the Interim Chief of Staff, effective August 27, 2018. *Id.* ¶ 54; Prabhu Dec. ¶¶ 17-19. To fill the spot vacated by DeSantis, Prabhu, needing to act "quickly," selected James Delle to serve as Acting Dean for CGSAL. Prabhu Dec. ¶¶ 22, 26. Months prior, Prabhu had offered Delle the position of Associate Provost of Academic Administration at Millersville, which Delle had accepted. *Id.* ¶ 53. That position was effective July 1, 2018. Prabhu Dec. ¶ 17.

Prabhu declared that Delle's prior experience in the relevant areas of responsibilities within another State System university setting made him the best candidate to assume the role of Acting Dean for CGSAL. *Id.* ¶ 26. Prabhu explained that he chose Delle because, *inter alia*, Delle had demonstrated an ability to fulfill many of the responsibilities of Dean through his four-year experience as Associate Dean at Shippensburg University, which was a sister university within the State System of Higher Education ("SSHE").[3] *Id.* ¶ 24 (citing Delle Resume, Ex. K, ECF No. 25-4). During his tenure, Delle gained academic program review and development experience at a larger college and spent a year also serving as Associate Provost. *Id.* Delle also had relevant experience as Department Chair for a large department at Kutztown University, another sister university within the SSHE. *Id.* In contrast, Prabhu explained, Welch did not have

---

[3]    Prior to joining Millersville, from May 2008 to August 2014, Delle was the Chair of the Department of Anthropology and Sociology at Kutztown University, where he had been working since 2002. Defs.' Stmt Fact ¶¶ 49-50; Pl.'s Resp. Def.'s Stmt Fact ¶¶ 49-50. In August 2014, Delle was hired by Shippensburg University as Associate Dean of the College of Arts and Sciences. *Id.* ¶ 51. In January 2017, Delle was appointed Acting Associate Provost at Shippensburg, while continuing to serve as Associate Dean. *Id.* ¶ 52.

significant experience in academic program review and development.  *Id.* ¶ 25 (citing Welch

Resume, Ex. L, ECF No. 25-4).  Rather, most of her prior experience was in the secondary-

school setting and the development and review of non-credit based and intersession programs.

*Id.*  Nevertheless, in August 2018, Prabhu offered Welch the position of Interim Associate Dean,

which would have involved increased responsibility and increased pay, but Welch declined.  *Id.*

¶¶ 31-37.

Following the change in leadership, Welch felt "shut out of the communication link."  *Id.*

128:23.  She testified that Millersville's prior president used to bring her in to different things, so

she was on many committees across the campus and felt respected, but felt "defeated" and

"disrespected" working for Delle.  Pl. Dep. 131:15-22.  Welch testified that Delle started doing

the work she used to do and that it was "embarrassing" because she had to run her decisions

through Delle.  *Id.* 129:3 – 130:4.  Welch never suffered a pay decrease or title decrease, but still

felt "demoted" working for Delle.  *Id.* 127:1-15.  On November 12, 2019, Welch resigned from

Millersville.  *Id.* 131:5-17; Defs.' Stmt Fact ¶ 76; Pl.'s Resp. Defs.' Stmt Fact ¶ 76.

In the above-captioned action, Welch filed a sixteen-count amended complaint, alleging

discrimination, retaliation, and a hostile work environment because of her race, sex, and age.  *See*

Am. Compl., ECF No. 6.  On August 21, 2021, Defendants filed a Motion for Summary

Judgment arguing that Welch has failed to state a prima facie case as to any claim and,

moreover, that they have offered legitimate, non-discriminatory reasons for their actions, which

Welch has not shown are false or pretextual.  *See* SJ Mem., ECF No. 25-1.  In her opposition

thereto, Welch states that she is only pursuing counts 1, 3, 5, 6, 13, 15, and 16.  *See* Opp. 7, ECF

No. 29.  These counts are as follows, as to Millersville: (1) Title VII Retaliation, (3) Title VII

Race Discrimination- Disparate Treatment, (5) Title VII Race Discrimination- Hostile Work

Environment, (13) Title VII Sex Discrimination- Disparate Treatment, (15) Title VII Sex

Discrimination- Hostile Work Environment, and as to DeSantis: (6) PHRA Race Discrimination-

Hostile Work Environment and (16) PHRA Sex Discrimination- Hostile Work Environment.[4]

## III.    LEGAL STANDARDS

### A.    Summary Judgment – Review of Applicable Law

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a).  A disputed fact is "material" if proof of its existence or nonexistence might affect the

outcome of the case under applicable substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986).  An issue of material fact is "genuine" if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party.  *Id.* at 257.

The party moving for summary judgment bears the burden of showing the absence of a

genuine issue as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once

such a showing has been made, the non-moving party must go beyond the pleadings with

affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific

material facts which give rise to a genuine issue.  Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324;

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the

non-moving party "must do more than simply show that there is some metaphysical doubt as to

the material facts").  The party opposing the motion must produce evidence to show the

existence of every element essential to its case, which it bears the burden of proving at trial,

because "a complete failure of proof concerning an essential element of the nonmoving party's

---

[4]        Summary judgment is entered in favor of Defendants and against Plaintiff on the other
counts: 2, 4, 7-12, and 14.

case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.  The court must

consider the evidence in the light most favorable to the non-moving party.  *Scott v. Harris*, 550

U.S. 372, 378 (2007).

### B.      Retaliation – Review of Applicable Law

Federal law prohibits an employer from retaliating against an employee for opposing any

act made unlawful by the employment discrimination statutes or because the employee made a

charge, testified, assisted, or participated in an investigation, proceeding, or hearing under the

employment discrimination statutes.  *See E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 449 (3d

Cir. 2015).  To establish a prima facie case of illegal retaliation, a plaintiff must show:

  (1) protected employee activity;

   (2) adverse action by the employer either after or contemporaneous with the employee's

protected activity; and

   (3) a causal connection between the employee's protected activity and the employer's

adverse action.

*See id.*; *Selvato v. SEPTA*, 658 Fed. Appx. 52, 56 (3d Cir. 2016) (internal quotations omitted).

"With respect to 'protected activity,' the anti-retaliation provision of Title VII protects those who

participate in certain Title VII proceedings (the 'participation clause') and those who oppose

discrimination made unlawful by Title VII (the 'opposition clause')."  *Moore v. City of Phila.*,

461 F.3d 331, 341 (3d Cir. 2006).  "Whether the employee opposes, or participates in a

proceeding against, the employer's activity, the employee must hold an objectively reasonable

belief, in good faith, that the activity they oppose is unlawful under Title VII."  *Id.*  In the

retaliation context, "the employer's actions must be harmful to the point that they could well

dissuade a reasonable worker from making or supporting a charge of discrimination."
*Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 57 (2006)

"Once a plaintiff establishes a prima facie case, the burden shifts to the employer to advance a legitimate non-retaliatory reason for its conduct. If an employer advances such a reason, a plaintiff then must show that the proffered reason was a pretext for retaliation." *Estate of Oliva v. N.J., Dep't of Law & Pub. Safety, Div. of State Police*, 604 F.3d 788, 798 (3d Cir. 2010).

### C.  Disparate Treatment – Review of Applicable Law

Federal law prohibits employment discrimination based on race, color, religion, sex, national origin, age, and disability. *See E.E.O.C.*, 778 F.3d at 448-49.  To establish a prima facie case of employment discrimination in the case of failure to hire or promote, the plaintiff may make a prima facie case by showing:

(1) she is a member of a protected class;

(2) she applied for and was qualified for the position;

(3) she suffered an adverse employment action; and

(4) the action occurred under circumstances that could give rise to an inference of intentional discrimination.

*See Moore v. Sec'y United States Dep't of Homeland Sec.*, 718 F. App'x 164, 165 (3d Cir. 2017).[5]  "The central focus in a discrimination case is "whether the employer is treating 'some

---

[5]     Although the Supreme Court has also identified the third and fourth elements as: (3) despite the plaintiff's qualifications, she was rejected for the position, and (4) after her rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications, it clarified that the "facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from [the plaintiff] is not necessarily applicable in every respect to differing factual situations." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 807 (1973).

people less favorably than others because of their race, color, religion, sex, or national origin.'" *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978) (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15. (1977)).

If the plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to produce evidence of a legitimate, nondiscriminatory reason for its action.  *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142-43 (2000).  If the employer satisfies its burden, the plaintiff is afforded the opportunity to prove that the legitimate reasons offered by the employer were not its true reasons, but merely a pretext for discrimination.  *See id.*

### D.      The McDonnell-Douglas Inquiry – Review of Applicable Law

Disparate treatment and retaliation claims brought under Title VII are analyzed using the three-step framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017); *Rabinowitz v. AmeriGas Partners, L.P.*, 252 F. App'x 524, 527 (3d Cir. 2007).  "Under the McDonnell Douglas paradigm, an employee must first establish a prima facie case of discrimination [or retaliation], after which the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment decision."  *Fasold v. Justice*, 409 F.3d 178, 184 (3d Cir. 2005); *State of Oliva*, 604 F.3d at 798; *Fuentes v. Perskie* , 32 F.3d 759, 763 (3d Cir. 1994) (holding that the burden on the employer to articulate a legitimate reason for the unfavorable employment decision is relatively light").  "If the employer articulates one or more such reasons, the aggrieved employee must then proffer evidence that is sufficient to allow a

---

This Court finds that the elements identified in *Moore* are more relevant here because this is not a situation in which Millersville continued to look for other applicants after rejecting Welch; rather, Prabhu hired Delle instead of Welch during a quick selection process.  *See* Prabhu Dec. ¶ 22.

reasonable finder of fact to find by a preponderance of the evidence that the employer's proffered reasons are false or pretextual." *Fasold*, 409 F.3d at 184; *Fuentes*, 32 F.3d at 763.

The plaintiff "may defeat a motion for summary judgment by either (i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *See Fuentes*, 32 F.3d at 764. "[T]he plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons . . . was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." *Id.* (internal citations omitted). "It is not sufficient to show that the employer's decision was wrong, mistaken, imprudent or incompetently made." *Rabinowitz*, 252 F. Appx. at 527. The plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reason for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for [the asserted] non-discriminatory reasons." *Fuentes*, 32 F.3d at 765 (internal citations and quotations omitted).

While this standard places a difficult burden on the plaintiff, 'it arises from an inherent tension between the goal of all discrimination law and our society's commitment to free decisionmaking by the private sector in economic affairs.'" *Id.* (quoting *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 531 (3d Cir. 1992)). "It is important to note that although the burden of production may shift during the McDonnell Douglas inquiry, the ultimate burden of persuading the trier of fact that the [employer] intentionally discriminated against the [employee] remains at all times with the [employee]." *Id. See also St. Mary's Honor Ctr. v.*

*Hicks*, 509 U.S. 502, 511 (1993) (explaining that once the plaintiff establishes a prima facie case, the law creates a "presumption" of unlawful discrimination, which is rebutted if the employer articulates a legitimate nondiscriminatory explanation for the employer's action, but the "presumption does not shift the burden of proof, and ignores our repeated admonition that the Title VII plaintiff at all times bears the ultimate burden of persuasion").

**E.       Hostile Work Environment – Review of Applicable Law**

To establish a hostile work environment claim, the plaintiff must show:

(1) she suffered intentional discrimination because of her national origin, race, or age;

(2) the discrimination was pervasive and regular;

(3) it detrimentally affected her;

(4) it would have detrimentally affected a reasonable person of the same protected class in his position; and

(5) there is a basis for vicarious liability.

*See Cardenas v. Massey*, 269 F.3d 251, 260 (3d Cir. 2001); *Tate v. Main Line Hosps., Inc.*, No. 03-6081, 2005 U.S. Dist. LEXIS 1814, at *60-61 (E.D. Pa. Feb. 8, 2005). In deciding whether an environment is "hostile," the court may consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993). Title VII and the PHRA[6] do "not reach the ordinary tribulations of the workplace, for example, sporadic use of abusive language or generally boorish conduct." *Vance v. Ball State Univ.*, 570 U.S. 421, 452 (2013) (internal

---

[6]       "The proper analysis under Title VII and the Pennsylvania Human Relations Act is identical, as Pennsylvania courts have construed the protections of the two acts interchangeably." *See also Weston v. Pennsylvania*, 251 F.3d 420, 425 n.3 (3d Cir. 2001).

quotations omitted).   "'[O]ffhanded comments and isolated incidents (unless extremely serious)' are not sufficient to sustain a hostile work environment claim."  *Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005).  The "standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'"  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).  A plaintiff claiming a hostile work environment based on regular and pervasive harassment must likewise establish that any harassment was due to her membership in a protected class or protected activity.  *See Culler v. Sec'y of U.S. Veterans Affairs*, 507 F. App'x 246, 249 (3d Cir. 2012) (per curiam) (citing *Andreoli v. Gates*, 482 F.3d 641, 644 (3d Cir. 2007)).

The McDonnell Douglas burden-shifting framework is inapplicable to a hostile work environment claim because there can be no legitimate justification for a hostile work environment.  *See Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 228 (3d Cir. 2017).

## IV.   ANALYSIS

### A.   Welch has failed to state a prima facie case of retaliation or of discrimination under Title VII against Millersville.

Welch states that her retaliation claim and all her discrimination claims are related to Millersville's failure to promote her to Acting Dean.  *See* Opp. 7.

As to her retaliation claim, Welch has shown, or at least created a genuine dispute of material fact, that she engaged in protected activity when she complained to Prabhu in February 2018 about being treated differently by DeSantis.  *See Crawford v. Metro. Gov't of Nashville & Davidson Cty.*, 555 U.S. 271, 276 (2009) ("When an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity." (internal quotations omitted)). *But see Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450

F.3d 130, 135 (3d Cir. 2006) ("A general complaint of unfair treatment is insufficient to establish protected activity under Title VII."). Welch has not shown, however, that she suffered any adverse action or that such action was a result of her complaint. First, Millersville's decision not to promote Welch to Acting Dean, but to offer her a different promotion instead, was not so harmful that it would dissuade a reasonable employee from making a discrimination complaint. Second, that decision was made approximately five months after her complaint and there is no evidence connecting the two. *See Theriault v. Dollar Gen.*, 336 F. App'x 172, 175 (3d Cir. 2009) (determining that the employee "did not establish causation because she was terminated several months after her alleged protected activity"). To the contrary, after her complaint, DeSantis gave her a glowing performance evaluation and Prabhu offered Welch a promotion. These undisputed facts contradict Welch's claim that she was denied the Acting Dean position in retaliation for complaining about DeSantis. Welch has therefore failed to make a prima facie case of retaliation.

Welch has also failed to make a prima facie case of discrimination. Welch has shown that she is the member of a protected class (Black female) and has created a genuine dispute of material fact as to whether she was qualified for the position of Acting Dean. For purposes of this Opinion, the Court also assumes that Welch has created a genuine issue of material fact as to whether she suffered an adverse action. This element is less clear in the instant action because while the failure to promote is generally recognized as an adverse employment action, *see Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 152-53 (3d Cir. 1999) (stating that a significant change in employment status, such failing to promote, constitutes an adverse employment action in the Title VII discrimination context), Welch was offered a different promotion that also included an increase in pay. Regardless, Welch has not shown that the decision occurred under

circumstances giving rise to an inference of intentional discrimination.  Rather, Welch merely

cites to the fact that Delle was a white male and to her own subjective belief that she was more

qualified for and should have been made Acting Dean based on her position as Assistant Dean.

*See Washington v. Malmud*, No. 1:19-cv-05927-NLH-KMW, 2020 U.S. Dist. LEXIS 194034, at

\*7-8 (D.N.J. Oct. 20, 2020) (dismissing the Title VII claim arising from failure-to-promote

because the plaintiff "alleged nothing more to show that discrimination was at the root of these

alleged actions than that she is African American [] and 61 years old, and that Defendants are

white and younger than her").  There is no evidence Prabhu ever made any derogatory comments

or took any other actions that would raise an inference of discrimination.  Rather, Welch

improperly relies on mere supposition.  *See Steele v. Pelmor Labs. Inc.*, 642 F. App'x 129, 135

(3d Cir. 2016) (holding that because the plaintiff "has the ultimate burden to prove intentional

discrimination, her 'gut feeling' cannot substitute for actual evidence" (internal citation

omitted)); *Gonzalez v. Sec'y of Dept of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012) ("As a

general proposition, conclusory, self-serving affidavits are insufficient to withstand a motion for

summary judgment." (internal quotations omitted)).  Despite the absence of direct evidence of

discrimination, Welch has also failed to offer any comparator evidence to support her claim.  *See*

*McKenna v. Healthease, Inc.*, No. 10-3940, 2013 U.S. Dist. LEXIS 56083, at \*25 (E.D. Pa. Apr.

18, 2013) (determining that a reasonable factfinder has no basis to make an inference of

discrimination where the alleged comparator had more seniority); *Gutknecht v. SmithKline*

*Beecham Clinical Labs.*, 950 F. Supp. 667, 677 n.13 (E.D. Pa. 1996) (concluding the evidence

did not show that similarly situated younger employees were treated more favorably where the

plaintiff failed to produce evidence that the three alleged comparators were similarly situated in

terms of their seniority, performance evaluations, and other relevant factors).  Accordingly, given

the complete absence of any evidence that Millersville's decision not to promote her to Acting

Dean was the result of intentional discrimination, Welch has failed to state a prima facie case of

discrimination.

Since Welch has failed to present evidence from which a jury could find a prima facie

case of retaliation or of discrimination, Millersville is entitled to summary judgment on these

claims.  Nevertheless, this Court will address the McDonnell Douglas paradigm.

**B.     Millersville has advanced a legitimate non-retaliatory, non-discriminatory reason for its decision not to promote Welch to Acting Dean.**

Even if Welch had made a prima facie case of retaliation or of discrimination,

Millersville has advanced a legitimate non-retaliatory, non-discriminatory reason for choosing

Delle to be Acting Dean for CGSAL instead of promoting Welch to the position.  Specifically,

Prabhu declared that Delle's prior experience in the relevant areas of responsibilities within

another State System university setting made him the best candidate to assume the role of Acting

Dean for CGSAL.  *See* Prabhu Dec. ¶ 26.  Prabhu explained that Delle gained academic program

review and development experience through his four-year experience at Shippensburg University

and also had relevant experience as Department Chair for a large department at Kutztown

University, both sister universities within the SSHE.  *Id.* ¶ 24.  In contrast, Prabhu declared,

Welch did not have the same level of experience in academic program review and development

and most of her prior experience was in the secondary school setting, which is why Welch was

not chosen to be Acting Dean.  *Id.* ¶ 25.

Prabhu's explanation is sufficient to satisfy Millersville's "relatively light burden" to

show a legitimate reason for its failure to promote Welch to Acting Dean.  *See Bray v. Marriott*

*Hotels*, 110 F.3d 986, 990-91 (3d Cir. 1997) (concluding that the employer offered evidence of a

nondiscriminatory reason for its selection of someone else for the job, pointing to specific prior experience and its relevancy to the position).

C.     **Welch has not shown that Millersville's proffered reason for promoting Delle instead of Welch is false or pretextual.**

"Where the employer asserts it hired the best qualified candidate, a plaintiff must show that the defendant's selection process and criteria were filled with such inconsistencies that the employer's claim that it was seeking the best qualified candidate was a sham." *Boykins v. SEPTA*, 722 F. App'x 148, 153 (3d Cir. 2018) (internal quotations omitted).  To demonstrate pretext, the plaintiff "must show that the qualifications of the person actually promoted were so much lower than those of h[er] competitors that a reasonable factfinder could disbelieve the claim that the employer was honestly seeking the best qualified candidate." *Steele*, 642 F. App'x at 135 (internal citations omitted).  "In the absence of such a significant degree of difference in qualifications that may arouse a suspicion of discrimination, [the court must] defer to the employer's hiring decisions, as Title VII was not intended to diminish traditional management prerogatives." *Id.* (internal citations omitted).

Prabhu attested that Delle's prior experience with several sister universities within the SSHE made him the best candidate to assume the role of Acting Dean for CGSAL.  *See* Prabhu Dec. ¶ 26.  Prabhu stated that most of Welch's prior experience, in contrast, was in the secondary school setting.  *Id.* ¶ 25.  Prabhu further declared that Delle's academic program review and development experience, which Welch lacked by comparison, was important to the Acting Dean position.  *Id.* ¶¶ 24-25.

The resumes of both Delle and Welch support Prabhu's assessment of qualifications.  *See Boykins*, 722 F. App'x at 153 (finding that the plaintiff could not show that employer's selection process was a sham, because he could not point to any actual inconsistencies).  Specifically,

Delle began working at the college-level in 1996 as a visiting assistant professor and continued working at one of four universities (New York University, Franklin and Marshall College, Kutztown University, Shippensburg University) until he was hired by Millersville. *See* Delle Resume, Prabhu Dec. Ex. K, ECF No. 25-4. In contrast, Welch did not begin working at the collegiate level until 2003. *See* Welch Resume, Prabhu Dec. Ex. L, ECF No. 25-4. Accordingly, Welch also had less relevant experience with academic program review and development. Additionally Welch's first job as an assistant or associate dean was in June 2016, when she was appointed Assistant Dean for Millersville's CGASL. *See* Welch Resume. Delle, by comparison, started working as an associate dean two years earlier, in August 2014, at Shippensburg, where he served until becoming the Associate Provost of Academic Administration at Millersville in 2018. *See* Delle Resume. Although Welch had a longer tenure at Millersville than Delle, Prabhu based his decision on other factors. *See Longstreet v. Holy Spirit Hosp.*, 67 F. App'x 123, 126-27 (3d Cir. 2003) (holding that although the plaintiff had over thirteen years of experience and the person chosen for the promotion had less than two, the employer asserted that its appointment decision was based on a totality of factors and the plaintiff failed to produce evidence sufficient to compel a finding of pretext). Welch's opinion that she should have been made Acting Dean does not present a Title VII claim. *See Steele*, 642 F. App'x at 135 (explaining that although the plaintiff believed she was better qualified for the position, "that is not her decision to make"). For all these reasons, Welch has failed to show that Millersville's hiring process was a sham or that its reasons for hiring Delle were pretextual.

Summary judgment is entered in favor of Millersville and against Welch on all retaliation and disparate treatment claims under Title VII: counts 1, 3, and 13.

**D.      Welch has failed to state a hostile work environment pursuant to Title VII against Millersville and pursuant to the PHRA against DeSantis.**

Welch has failed to show, first, that she suffered intentional discrimination because of race or gender.  Significantly, Welch admits that at no time during the course of her employment did DeSantis or Prabhu ever say any threatening words to her, ever use any racially charged language, or ever use derogatory or demeaning language about women.  Moreover, there is nothing inherently discriminatory about the various incidents that form the basis of Welch's hostile work environment claim to raise an inference of discrimination.  *Accord Andrews v. Philadelphia*, 895 F.2d 1469, 1488 (3d Cir. 1990) (permitting a court to infer an intent to discriminate for certain conduct, such as sexual propositions, innuendo, pornographic materials, or sexual derogatory language).  Specifically, Welch argues that she has produced evidence that, *inter alia*, DeSantis denied her the same personal attention he provided to white employees, made her use older furniture, withheld information, made changes to her budget, and prevented her from hiring new staff.  *See* Opp. 27.  Because these are work-related actions and there is no evidence of any comments regarding race or gender, Welch has failed to present evidence of intentional discrimination.  *See Tucker v. Merck & Co.*, 131 F. App'x 852, 859 (3d Cir. 2005) (concluding that the plaintiff failed to state a hostile work environment claim where he could not cite a single incident involving the use of a racial epithet, racist symbol, or any direct comment concerning race, but instead raised eight separate incidents where the employer made determinations regarding benefits issues raised by him).

Welch has also failed to show that any discrimination was pervasive and regular.  As noted, Welch cites to numerous isolated incidents that occurred over a period of several years.  Between February 2018 and July 2018, for example, the only interaction Welch had with DeSantis that she felt rose to the level of harassment was when he denied her request to get an

additional staff member to help alleviate the workload.  He did not, however, show any

unprofessional conduct or make any inappropriate statements; rather, he simply shook his head

no.  Welch's disagreement with DeSantis's decision does not mean that it was motivated by

either her race or gender.  *See Tucker*, 131 F. App'x at 859 (holding that the plaintiff's subjective

disagreement with employment decisions and opinion that they were racially motivated was

insufficient as a matter of law to establish a hostile work environment).  In fact, during this same

period, DeSantis issued a positive performance evaluation for Welch.

Welch cites to only one occasion, which occurred prior to February 2018, when DeSantis

raised his voice to her.   This type of "isolated incident" is insufficient to sustain a hostile work

environment claim.  *See Vance*, 570 U.S. at 452.  Even when all incidents are considered

together, no reasonable jury could find that Welch has satisfied the severe or pervasive element

of her hostile work environment claim.  *See Jenkins v. Sw. Pa. Human Servs.* , No. 2:20-501,

2021 U.S. Dist. LEXIS 241007, at *34-36 (W.D. Pa. Dec. 17, 2021) (granting summary

judgment to the defendant where there was no indication that the employee was asked to move

out of her office, was denied new office furniture, and was required to see additional patients

based on her gender and finding that the conduct did not rise to the level of severe or pervasive).

Welch has also failed to show that she was detrimentally affected.  Rather, during the

period of the alleged hostile work environment, she received positive performance evaluations, a

salary increase, and was offered a promotion.  Accordingly, a reasonable person of Welch's

same protected class and in her position would not have been detrimentally affected either.

There is also insufficient evidence to connect Welch's decision to voluntarily resign in

November 2019, which is more than one year after DeSantis was no longer her direct supervisor,

to the hostile work environment she allegedly experienced under him.  *See Pa. State Police v.*

*Suders*, 542 U.S. 129, 141 (2004) (holding that to show constructive discharge, the plaintiff must establish her "working conditions [became] so intolerable that a reasonable person in [her] position would have felt compelled to resign"); *Stucke v. City of Philadelphia*, 685 Fed. App'x 150, 155 (3d Cir. 2017) ("Among the relevant factors to consider are whether an employee was threatened with termination, demoted, had [her] pay reduced, was involuntarily transferred, had [her] job responsibilities altered, or was given unsatisfactory job evaluations.").  Additionally, although Welch complains that she felt "disrespected" working for Delle and that she was being set up to fail, she does not present any evidence to show that this was due to discriminatory behavior or that she was in fact detrimentally affected.  *See Grossberg v. Hudson Cty. Dep't of Human Servs.*, 740 F. App'x 762, 765 (3d Cir. 2018) (affirming the entry of summary judgment in the defendant's favor where the plaintiff's claims that her supervisors set her up to fail at her new job by withholding proper training were mere conclusory statements and her complaints that she was assigned a dirty desk and broken chair did not come close to establishing an adverse employment action).

Neither Title VII nor the PHRA is an avenue for an unhappy employee to complain.  *See Faragher*, 524 U.S. at 788.  Welch has failed to present evidence that would allow a jury to find she suffered a hostile work environment claim based on either race or gender.  Summary judgment is entered in favor of Defendants and against Welch on counts 5, 6, 15, and 16.

## V.    CONCLUSION

Because Welch is no longer pursuing counts 2, 4, 7-12, and 14, summary judgment is entered in favor of Defendants and against Welch on these counts.

Welch has failed to present a prima facie case of retaliation or disparate treatment against Millersville based on its failure to promote her to Acting Dean.  Even if she had, Millersville has

presented a non-retaliatory, non-discriminatory reason for its decision: Delle was more qualified

for the position.  Since Welch cannot show that the proffered reason is false or pretextual,

summary judgment is entered in Millersville's favor on the retaliation and disparate treatment

counts.

Finally, Welch has failed to present evidence that would allow a jury to find that she

experienced a hostile work environment based on either race or gender.  Summary judgment is

entered in favor of Defendants on all hostile work environment claims under Title VII and the

PHRA.

A separate Order follows.

BY THE COURT:


_/s/ Joseph F. Leeson, Jr._____
JOSEPH F. LEESON, JR.
United States District Judge